IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

CRA, INC.,

                Plaintiff,

        v.

OZITUS INTERNATIONAL, INC.,
KERRY YERICO, MEREDITH GRIESE,
COLIN WALL, CASEY MCDONALD,
SCOTT HUDAK, SYDNIE GIACOMUCCI,
WAYNE WEBB, AMANDA GONZALEZ,
KENYATTA ISRAEL, JAMES BOULGER,
MICHAEL MOORE, and STEVEN
SETTLES,

                Defendants.

HONORABLE JEROME B. SIMANDLE

Civil No. 16-5632 (JBS/AMD)

**OPINION**

APPEARANCES:

Robert C. Brady, Esq.
GIBBONS PC
One Gateway Center
Newark, NJ 07102
        Counsel for Plaintiff

Christine P. O'Hearn, Esq.
Michael Joseph Miles, Esq.
BROWN & CONNERY LLP
360 Haddon Avenue
P.O. Box 539
Westmont, NJ 08108
        Counsel for Defendants Ozitus and Giacomucci

Alexander Nemiroff, Esq.
GORDON & REES LLP
One Commerce Square, 2005 Market Street
Suite 2900
Philadelphia, PA 19103
        Counsel for Defendants Yerico, Wall, McDonald, Hudak,
        Gonzalez, Israel, Boulger, Moore, and Settles

David K. Cuneo, Esq.
LAW OFFICES OF DAVID K. CUNEO
885 Haddon Avenue
Collingswood, NJ 08108
     Counsel for Defendant Griese


**SIMANDLE**, District Judge:

## I.   **INTRODUCTION**

This matter comes before the Court on the motion of

Defendants Ozitus International, Inc. ("Ozitus"), Kerry Yerico,

Meredith Griese, Colin Wall, Casey McDonald, Scott Hudak, Sydnie

Giacomucci, Amanda Gonzalez, Kenyatta Israel, James Boulger,

Michael Moore, and Steven Settles (collectively, "Individual

Defendants"[1]) to dismiss certain counts of Plaintiff CRA, Inc.'s

("CRA") Complaint for failure to state a claim. [Docket Item

26.] Plaintiff alleges that Ozitus tortiously interfered with

Plaintiff's contracts with the County of Camden and with

contracts between Plaintiff and its employees (including the

Individual Defendants), induced Plaintiff's employees to breach

their confidentiality and non-compete agreements with Plaintiff,

and wrongfully hired Plaintiff's employees to provide the same

services to the County of Camden that Plaintiff had provided

before Ozitus allegedly tortiously interfered with that business

_____

[1] Wayne Webb was formerly a named defendant in this matter who
joined in the Motion to Dismiss but was terminated as a party on
May 24, 2017. [Docket Items 50 & 51.]

relationship. [Docket Item 1.]

Plaintiff asserts claims against Defendants as follows: breach of contract against the Individual Defendants (Count 1); tortious interference with contract against Ozitus (Count 2); breach of covenant of good faith and fair dealing (Count 3) and breach of duty of loyalty (Count 4) against the Individual Defendants; aiding and abetting the breach of duty of loyalty against Ozitus (Count 5); breach of fiduciary duty against the Individual Defendants (Count 6); aiding and abetting the breach of fiduciary duty against Ozitus (Count 7); tortious interference with contract against Ozitus (Count 8); tortious interference with prospective economic advantage against Ozitus (Count 9); corporate raiding against Ozitus (Count 10); unfair competition against Ozitus (Count 11); and unjust enrichment against all Defendants (Count 12). [Docket Item 1.]

Defendants seek to dismiss Counts 1 through 7 and 10 through 12. [Docket Item 26 at 2.] Plaintiff has submitted a Response in opposition [Docket Item 32] and Defendants have submitted a Reply [Docket Item 35].

The Court will address the arguments as to each claim in turn. For the reasons set forth below, the Court **denies in part and grants in part** Defendants' motion.

## II.  BACKGROUND[2]

CRA is a corporation that provided certain services to the Camden County Police Department ("CCPD") from 2013 to 2016 pursuant to a series of contracts with Camden County. [Docket Item 1 ¶¶ 18-22, 54-64, 67, 70.]

The Individual Defendants are all former employees of CRA, who signed confidentiality and non-compete agreements with CRA as part of their employment, and are now employed with Ozitus. [Id. ¶¶ 29-53.] The relevant agreements are attached to the Complaint as Exhibits B through F and H through L.[3] [Docket Items 1-2 through 1-8 and 1-10 through 1-14.] The relevant portions of the non-compete clause of the agreements provide as follows:

> (11) AGREEMENT NOT TO COMPETE For a period of one year following termination of employee's agreement with CRA, employee hereby agrees not to be employed by, contract or subcontract with, directly or indirectly own, manage, control, or operate, or have any direct financial interest in, any entity which directly competes with CRA in any business endeavor in which

---

[2] The facts alleged are drawn from Plaintiff's Complaint, exhibits to the Complaint, matters of public record, and undisputedly authentic documents Defendants have attached as exhibits to their Motion upon which Plaintiff's claims are based. See City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990) and Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)). For purposes of this motion, the Court accepts Plaintiff's factual allegations as true.

[3] The Hudak Agreement is not attached as an exhibit to the Complaint. [Docket Item 1 ¶¶ 38-39.] Former Defendant Wayne Webb's agreement is Exhibit G. [Docket Item 1-9.]

CRA is currently engaged or which is engaged in any
business endeavor in which CRA has expressed to
employee a significant interest in developing as CRA's
business, or with whom employee has discussed or
entertained the prospect of a business relationship by
CRA or by employee personally if employee would be
providing services to the CRA customer or potential
customer similar to, or in competition with the
services CRA performs or seeks to perform or if
employee would be using the job knowledge or the
business contacts he gained as a result of his work
with CRA. Employee further acknowledges that potential
business opportunities encountered, investigated or
considered by employee or others employed by CRA are
the basis of CRA's future success, and employee will
not, during the one year period following termination
of employment as aforesaid, usurp or develop such
opportunities for the benefit of employee or any other
person or entity. . . .

[Docket Item 1-4 at 7-8.] The agreements also provide that they

are "governed by the laws of the State of New York, without

reference to conflict of laws principles thereof[.]" [Id. at 9.]

CRA provided services to CCPD in the nature of criminal

analyst services pursuant to two separate contracts upon which

CRA successfully bid in 2013; those contracts were renewed

several times. [Docket Item 1 ¶ 54.] Under the first contract,

CRA provided strategic analysis services for the CCPD Strategic

Analysis Unit ("SAU"); that contract initially ran from June 1,

2013 to May 31, 2014 and was renewed twice, with its final term

running from June 1, 2015 to May 31, 2016. [Id. ¶¶ 20, 55.]

Under the second contract, CRA provided criminal analysts for

CCPD's Real Time Tactical Operations and Intelligence Center

("RTTIOC"); that contract initially ran from December 1, 2013, was renewed in October 2015 and was due to run until November 30, 2016, when, on June 20, 2016, Camden County informed CRA that it was terminating the second contract effective July 31, 2016. CRA alleges that such termination was premature. [Id. ¶¶ 21, 61-64, 70.]

CRA alleges that it is a nationally-recognized leader "in the provision of criminal and intelligence analysts" and "staffs qualified intelligence and criminal analysts at fusion centers and real-time centers in multiple agencies throughout the country." [Id. ¶ 27.] In contrast, while Ozitus was a single-employee I.T. services company, it hired numerous ex-CCPD personnel and "now purports to offer strategic analysis, criminal intelligence and crime scene investigation – all areas of business in which CRA is engaged." [Id. ¶ 28.] CRA states that while it "faithfully and with diligence and expertise performed the First Contract and all renewals of that contract[,]" Ozitus's machinations resulted in the fact that, in May 2016, Ozitus "was the sole bidder on the contracts to replace CRA" and in fact replaced CRA. [Id. ¶¶ 59, 69.]

In early 2016, Ozitus was a single-employee I.T. services provider to Camden County and began to hire ex-CCPD personnel including the retired deputy chief of the CCPD, Michael Lynch.

Lynch bad-mouthed CRA to CCPD and Camden County and "engaged in a campaign of interference with CRA's performance" of its contracts with the CCPD "and its management of its personnel." [Id. ¶¶ 65-66.] On May 1, CRA's contact within the CCPD, James Bruno, told CRA's vice president, Thomas Mauro, that CCPD would not be renewing the first contract and would instead be advertising a Request for Proposals ("RFP") for that contract. Bruno told Mauro that "CCPD would not allow CRA to submit a bid in response to CCPD's RFP." [Id. ¶ 67.] CRA also states that it was limited contractually from "submitting terms different" to those already agreed to in the contract. [Id. ¶ 68.] When CCPD advertised the RFP, Ozitus was the only bidder and was awarded the contract. [Id. ¶ 69.][4]

CRA alleges that Ozitus employees began trying to contact CRA employees in May of 2016 and recruiting those employees while they were still employed by and actively working for CRA.

_____

[4] CRA asserts that Camden County advertised the RFP on an unfamiliar website, and not in its usual advertising spots for RFPs – namely, the City of Camden website and the New Jersey Courier Post's classified ad section. [Docket Item 1 ¶ 69.] CRA alleges this was done to hide the RFP from CRA and other potential bidders. However, Defendants claim that the RFP was advertised both on the City of Camden website and in the Courier Post and that the Court may consider these advertisements as matters of public record. [Docket Item 26 at 27 n.2, citing Docket Items 26-9 and 26-10.] The Court need not resolve what appears to be a factual dispute at this stage of the proceedings for resolution of Defendants' Motion.

[<u>Id.</u> ¶¶ 71-74.] It alleges that Lynch, prior to May 23, 2016, gave the Individual Defendants application forms for jobs with Ozitus, instructed them to fill out the applications during their working hours with CRA, and conducted interviews with them during their working hours with CRA. [<u>Id.</u> ¶¶ 75-76, 78.] CRA also alleges that the Individual Defendants had already accepted employment with Ozitus by the time the first contract expired on May 31, 2016 and commenced employment with "Ozitus – a competitor of CRA – within one year (and almost immediately) after the termination of their employment with CRA." [<u>Id.</u> ¶¶ 79, 83.]

## III.    STANDARD OF REVIEW[5]

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the nonmoving party. A motion to dismiss may be granted only if a court concludes that the plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests that make such a claim plausible on

---

[5] The Court exercises jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(a).

its face. <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).

Although the court must accept as true all well-pleaded factual allegations, it may disregard any legal conclusions in the complaint. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009); <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009). Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. <u>Iqbal</u>, 556 U.S. at 678.

In addition, the complaint must contain enough well-pleaded facts to show that the claim is facially plausible. This "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> "If the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." <u>Id.</u> at 679 (internal quotation marks and citation omitted).


**IV. DISCUSSION**

**A. Breach of Contract (Count 1)**

Defendants claim that Plaintiff fails to state a claim against the Individual Defendants for breach of contract pursuant to the non-compete agreement because Plaintiff has not

plausibly pled that CRA and Ozitus were competitors within the meaning of the non-compete agreement. [Docket Item 26-1 at 22-25.]

In the alternative, Defendants argue that the Court should dismiss Count 1 because enforcing the non-compete agreement would be against public policy as it would harm the public. [Id. at 25-27.]

The Court will address these arguments in turn.

1. CRA has plausibly pled that CRA and Ozitus were competitors within the meaning of the non-compete agreement

Defendant argues, in essence, that CRA and Ozitus cannot be construed as having been competitors within the meaning of the non-compete agreement because "CRA did not directly compete with Ozitus at the time the Individual Defendants became employed by Ozitus." [Id. at 25.]

Defendant argues when Bruno informed CRA on May 1, 2016 that Camden County was terminating the first contract and instead advertising a RFP and CRA did not submit a bid in response to the RFP, it cannot plausibly plead that it was a direct competitor to Ozitus, the sole bidder on the RFP:

> Since it admittedly failed to submit a bid in response to the County's RFP – regardless of the reason – Plaintiff could not possibly have obtained the contract awarded pursuant thereto or performed the services Ozitus is now performing for the County. It logically follows that Plaintiff and Ozitus were not direct competitors for the work to be performed under

County's contract. Further, there are no allegations
that Ozitus directly competes with Plaintiff for any
other contracts or business. Thus, because Ozitus did
not directly compete with Plaintiff, the Individual
Defendants did not breach the Non-Compete Agreement by
becoming employed by Ozitus.

[Docket Item 26-1 at 25.]

The Court agrees that the relevant, operative clauses of

the non-compete agreement appear to be those which state: "For a

period of one year following termination of employee's

employment with CRA, employee hereby agrees not to be employed

by . . . any entity which directly competes with CRA in any

business endeavor in which CRA is currently engaged[.]" [Docket

Item 1-4 at 7-8.]

While the Court agrees that a "covenant against competition

must be construed strictly and should not be extended beyond the

literal meaning of its terms[,]" <u>Elite Promotional Mktg., Inc.</u>

<u>v. Stumacher</u>, 8 A.D.3d 525, 526 (N.Y. App. Div. 2004), the Court

is also mindful of the fact that, when considering a motion to

dismiss pursuant to Fed. R. Civ. P. 12(b)(6) it must consider

all allegations and reasonable inferences that may be drawn

therefrom in the light most favorable to the plaintiff.

The Court finds the reading of the Complaint urged by

Defendants to be overly constrained and notes that Defendants

cite no authority holding or suggesting that two businesses

cannot be found to "directly compete" where one does not, for

instance, submit a bid for the same project as the other. A natural reading of the phrase "directly compete" encompasses broader meaning than that.

Plaintiff has alleged that CRA and Ozitus are engaged in the same type of work, namely, providing criminal analysts and intelligence personnel to law enforcement agencies. Plaintiff has also alleged that it was engaged in that business at the time that Ozitus began, by a reasonable inference from the facts alleged in the Complaint, preparing to go after CRA's contract with CCPD and replace CRA in the provision of such services to the County. Such preparations included taking steps to identify and hire CRA's employees while CRA was still working pursuant to the contract. CRA also alleges that the Individual Defendants in fact began working with Ozitus within one year, and almost immediately, after their employment with CRA ended.

Given these factual allegations, the Court finds that CRA has adequately pled a claim that Ozitus was, at the relevant times, an entity which directly competed with CRA in a business endeavor in which CRA was then engaged. Accordingly, Plaintiff has adequately pled a claim for breach of the non-compete agreements by the Individual Defendants for joining Ozitus as employees within one year of the termination of their employment from CRA.

2. The Court will not dismiss a claim based on breach of the non-compete agreement as against public policy at this stage of the proceedings

Defendants argue, in the alternative, that the Court should "'strictly construe[]'" the non-compete agreements "because of the 'powerful considerations of public policy which militate against sanctioning the loss of a [person's] livelihood.'" [Docket Item 26-1 at 25, citing Gramercy Park Animal Ctr v. Novick, 362 N.E.2d 608, 608 (N.Y. 1977) (further internal citations omitted).]

New York law states that a "restraint is only reasonable if it: (1) is no greater than is required for the protection of the legitimate interest of the employer, (2) does not impose undue hardship on the employee, and (3) is not injurious to the public. A violation of any prong renders the covenant invalid." BDO Seidman v. Hirshberg, 93 N.Y.2d 382, 388-89 (N.Y. 1999) (internal citations omitted).

Defendants urge that the Court find the non-compete agreements at issue here invalid because "it would be particularly harmful to the public to enforce that agreement" since the Individual Defendants "provide critical services" for the CCPD, per the allegations in the Complaint. [Docket Item 26-1 at 26 citing Docket Item 1 ¶ 19.] Defendants argue that, as the work of the Individual Defendants at CRA "'assisted in the

deployment of police resources throughout the city in a hugely successful program to enhance public safety and crime-fighting,'" [Docket Item 26-1 citing Docket Item 1 ¶ 20] "[d]epriving the Department of the institutional memory and continuity provided by the employment of the Individual Defendants would have a substantial impact on the Department's ability to operate the SAU and the RTTIOC" which would in turn "have a profoundly negative impact on public safety in the City of Camden." [Docket Item 26-1 at 26-27.]

Plaintiff responds, and the Court is inclined to agree, that the question of whether it would be harmful to the public to enforce the non-compete agreements is a "detailed fact-intensive inquiry that is . . . inappropriate on a motion to dismiss." [Docket Item 32 at 14.] Plaintiff correctly notes that Defendants do not cite any case law to support the general proposition "that a court cannot enforce a restrictive covenant contained in a contract between an employee and a private employer that is performing work for a municipal police authority" [id. at 13]; neither did Defendants cite any support for the more general proposition that such covenants would harm the public or contravene public policy in more general law-enforcement-related contexts. Plaintiff has also asserted its intent to prove false in discovery the assertion that "it would

be harmful to the public to enforce" the non-compete agreements.
[Id.]

Under these circumstances, the Court is unwilling to
dismiss the claims for breach of the non-compete agreements on
the grounds that enforcing them would be harmful to the public.
See Installed Bldg. Prod., LLC v. Cottrell, No. 13-CV-1112, 2014
WL 3729369, at *7-*8 (W.D.N.Y. July 25, 2014) (" . . . the
enforceability of a non-compete agreement turns largely on the
facts of the particular case . . . there are a number of fact-
bound issues that will feed into the non-compete agreement's
reasonableness . . . As should be obvious, these are all
questions that can only be answered based on a more fully-
developed record. Accordingly, the Court cannot conclude that
the non-compete agreement is unenforceable as a matter of
law."); AAMCO Transmissions, Inc. v. Romano, 42 F. Supp. 3d 700,
711 (E.D.Pa. 2014) ("[B]ecause reasonableness is a fact-
intensive inquiry, it should not be determined on the pleadings
unless the unreasonableness is clear from the face of the
complaint").

Defendants are free to raise these or any other appropriate
arguments at later stages of these proceedings, when a greater
factual record has been developed.
***
For the foregoing reasons, the Court will deny Defendants'

motion to dismiss as to Count 1.

**B. Tortious Interference (Count 2)**

Defendants and Plaintiff agree that the Court's decision of whether to dismiss Count 2 should be based on its disposition of Defendants' motion as to Count 1. [Docket Items 26-1 at 28-29 and 32 at 15-16.]

Defendants claim that Plaintiff's claim for tortious interference against Ozitus fails because "[a]s set forth above, the Individual Defendants were not prevented by the Non-Compete Agreement from accepting employment with Ozitus, because it was not competing with Plaintiff at the time they accepted employment." [Docket Item 26-1 at 28.] They continue: "As a result, Plaintiff is without a protected interest [as required under New Jersey law, see Baxter Healthcare Corp. v. HQ Speciality Pharma Corp., 157 F. Supp. 3d 407, 420 (D.N.J. 2016),] in preventing the Individual Defendants from becoming employed by Ozitus." [Docket Item 26-1 at 28-29.]

For the reasons stated above, the Court disagrees. Accordingly, the Court will deny Defendants' motion as to Count 2.

**C. Breach of Covenant of Good Faith and Fair Dealing (Count 3)**

Defendants argue that Count 3 must be dismissed because a breach of the implied covenant of good faith and fair dealing

must arise from conduct distinct from conduct alleged to constitute a breach of contract. [Docket Item 26-1 at 29.] Defendants also argue that this Count must be dismissed because "New Jersey courts have applied the covenant of good faith and fair dealing in three general ways[,]" none of which are applicable here. [Id. at 31.]

In response, Plaintiff argues that the Court should not dismiss Count 3 because, while Plaintiff may not be able to recover on both a breach of contract claim and a claim for breach of the covenant of good faith and fair dealing, it should nevertheless be permitted to plead both claims as alternative causes of action, and cites Wade v. Kessler Inst., 172 N.J. 327, 346 (2002) and Fed. R. Civ. P. 8(d) in support; furthermore, Plaintiff argues, Defendants' proposed limited application of the covenant to the three general scenarios they describe is unnecessarily and incorrectly narrow. [Docket Item 32 at 16-19.]

Under New Jersey law, "a breach of the covenant of good faith and fair dealing must not arise out of the same conduct underlying an alleged breach of contract action." TBI Unlimited, LLC v. Clear Cut Lawn Decisions, LLC, No. 12-3355, 2013 WL 6048720, at *3 (D.N.J. Nov. 14, 2013). See also Kurnik v. Cooper Health Sys., No. A-4686-06T1, 2008 WL 2829963, at *24 (N.J. App. Div. July 24, 2008) (finding error where court instructed jury

on both breach of express contractual provision and breach of

implied covenant of good faith and fair dealing where two

alleged breaches arose from the identical conduct).

In Wade, the plaintiff claimed her employer wrongfully

discharged her by disregarding the procedures described in the

employer's manual. 172 N.J. at 344-45. The jury was instructed

on both the breach of contract claim and plaintiff's claim for

breach of the implied covenant of good faith and fair dealing.

In finding error, the New Jersey Supreme Court stated:

> [D]efendant's obligation to discharge plaintiff in
> accordance with the manual . . . [was] not implied;
> [it was] expressly set forth in the manual itself.
> From that perspective, there can be no separate breach
> of an implied covenant of good faith and fair dealing.
> In a more straightforward case, the breach of the
> implied covenant arises when the other party has acted
> consistent with the contract's literal terms, but has
> done so in a manner so as to have the effect of
> destroying or injuring the right of the other party to
> receive the fruits of the contract.

Id. at 344-45 (internal citations omitted).

While Wade states that "a [party] in an appropriate case"

may plead "alternative claims" because "[w]hen supported by the

facts, a jury may determine whether an employer has breached the

express terms of a . . . contract, and if not, whether the

employer nonetheless has breached the implied covenant of good

faith and fair dealing," id. at 346, it does not necessarily

follow that this case is such an appropriate case.

The factual predicate alleged here for breach of the
implied covenant of good faith and fair dealing is set out at
¶¶ 96 and 97 of the Complaint, alleging that the Individual
Defendants "breached their respective employment contract with
CRA by: (a) Commencing employment with Ozitus . . . within one
year . . . and (b) . . . disclosing CRA's confidential
information . . . . As such, each Employee Defendant engaged in
conduct, separate and apart from the performance of their
obligations under the contract, without good faith, and for the
purpose of depriving CRA of its rights and benefits under the
contract[.]" [Docket Item 1 ¶¶ 96-97.] This is identical to the
factual predicate for Count 1, breach of the non-compete and
confidentiality agreements. [Id. ¶ 83.]

The Court does not discern in the pleading a distinct
factual predicate for a breach of the implied covenant of good
faith and fair dealing; the only factual allegations contained
in Count 3 with regard to the Individual Defendants' allegedly
wrongful conduct is that they violated their non-compete and
confidentiality agreements. Plaintiff thus asserts only a claim
for breach of the expressed provisions of the contract, and not
breach of some implied covenant. Accordingly, the Court will
grant Defendants' motion to dismiss Count 3 as duplicative of
Count 1. See Oravsky v. Encompass Ins. Co., 804 F. Supp. 2d 228,

239 (D.N.J. 2011) (finding that, upon a motion to dismiss

pursuant to Fed. R. Civ. P. 12(b)(6), plaintiff's claim of

breach of the implied covenant of good faith and fair dealing

"fails" where "the remaining allegations supporting

[p]laintiff's claim are identical to the breach of contract

claim" because "it is duplicative of the breach of contract

claim"). Such dismissal will be without prejudice.

### D. Breach of Duty of Loyalty (Count 4) and Breach of Fiduciary Duty (Count 6)

Defendants argue that Counts 4 and 6 must be dismissed

because they represent attempts by Plaintiff to "repackage" the

breach of contract claim against the Individual Defendants "as

separate torts," but that the economic loss doctrine "prohibits

such efforts." [Docket Item 26-1 at 30.] Defendants allege that

"the same conduct that allegedly gives rise to the breach of

contract" is the basis for the alleged breaches of the duty of

loyalty and fiduciary duty: namely, obtaining employment with

Ozitus and disclosing confidential information. Defendant notes

that Plaintiff also claim that the Individual Defendants

completed job applications for and interviewed with Ozitus, but

that "[s]uch acts are simply part of obtaining the allegedly

prohibited employment" and are not distinct from it, thereby

qualifying as intrinsic to the conduct alleged to constitute a

breach of contract. [Id. at 32.] However, New Jersey law states

that whether "a tort claim can be asserted alongside a breach of contract claim depends on whether the tortious conduct is extrinsic to the contract between the parties." Arcand v. Brother Int'l Corp., 673 F. Supp. 2d 282, 308 (D.N.J. 2009) (emphasis added).

In response, Plaintiff asserts that Defendants argue both that Counts 4 and 6 fail because they allege only conduct that constituted a violation of a contract and that Counts 4 and 6 allege conduct extrinsic to the alleged contractual violation but that extrinsic conduct did not violate the Individual Defendants' fiduciary duties or duties of loyalty. [Docket Item 32 at 19.] Plaintiff states that its allegations that the Individual Defendants prepared applications for employment by Ozitus and interviewed with Ozitus during their working hours for CRA [Docket Item 1 ¶¶ 102, 112] constituted conduct that was extrinsic to the non-compete and confidentiality agreements, and thereby provide a basis for the tort claims in Counts 4 and 6. [Docket Item 32 at 20.]

In the alternative, Plaintiff urges that it would be unfair and prejudicial to dismiss these Counts while Defendants dispute the enforceability of the contracts, citing IDT Corp v. Unlimited Recharge, Inc., No. 11-4992, 2012 WL 4050298, at *6 (D.N.J. Sept. 13, 2012) (finding that while "[p]laintiffs may

not recover on both their contract claims and tort claims, both claims may be included in the complaint and can survive a motion to dismiss" when defendants "dispute the validity of the contracts" rendering it prejudicial to the plaintiffs if the court were to dismiss the tort claims). [Docket Item 32 at 21-22.]

Plaintiff cites United Aircraft Corp. v. Boreen for the proposition that while employees are "free to prepare to enter a rival business while still in the employ of the plaintiff[, t]his does not mean . . . that they [are] free to do so during working hours. [The plaintiff] has a property right in the services of its employees during working hours. Its employe[e]s have a duty to serve only [plaintiff] while performing the duties for which they are being paid." 284 F. Supp. 428, 447 (E.D.Pa. 1968). However, the court there, applying Pennsylvania law, found that although the "instances of derogations from this duty by the defendants" were "too numerous to elaborate upon here," they constituted "so far on this record an injury to [plaintiff] of de minimis proportions." Id.

Under New Jersey law, an "employee is entitled to make 'arrangements' for some new employment by a competitor and should be given some latitude in this regard" without such conduct "amount[ing] to a breach of his fiduciary duty." Auxton

<u>Computer Enterprise v. Parker</u>, 416 A.2d 952, 956 (N.J. App. Div. 1980). The court in Auxton ruled that the defendant did not breach his fiduciary duty by attending an interview "at a time when he should have been fulfilling his employment responsibilities to Auxton" because his behavior "in that regard does not reach that level of impropriety which has heretofore been required when imposing liability for violating the duty of loyalty owed to an employer. . . . Therefore, absent a covenant not to compete or breach of a confidential relationship, liability may not be founded upon these facts for breach of duty of loyalty." <u>Id.</u>

The Court finds, however, that Plaintiff has adequately pled claims for breach of the duty of loyalty and of fiduciary duty, given the inference one can reasonably make from the Auxton court's statement that attending an interview during working hours does not constitute a breach of fiduciary duty or the duty of loyalty "absent a covenant not to compete or breach of a confidential relationship." Those factual circumstances are precisely what are alleged here, and the Court is unwilling to state as a matter of law that New Jersey law precludes defining similar conduct under such circumstances as a breach of fiduciary duty or the duty of loyalty. The factual record has not yet been developed, and such a dismissal strikes the Court

as premature. Plaintiff has pled facts extrinsic to those which would constitute breach of contract; the Court will therefore decline to dismiss the tort claims in Counts 4 and 6 at this time.

**Aiding and Abetting (Counts 5 and 7]**

Defendants and Plaintiff agree that the Court's decision of whether to dismiss Counts 5 and 7 should be based on its disposition of Defendants' motion as to Counts 4 and 6. [Docket Items 26-1 at 34-35 and 32 at 22.]

Defendants claim that Plaintiff's claims against Ozitus for aiding and abetting violations of fiduciary duty and the duty of loyalty fail because "Plaintiff's claims against the Individual Defendants for both breach of the duty of loyalty and breach of fiduciary duty fail as a matter of law" and therefore, "Plaintiff cannot satisfy the . . . required element" of showing that "an independent wrong exist," pursuant to New Jersey law. [Docket Item 26-1 at 34-35, citing Landy v. Fed. Deposit Ins. Corp., 486 F.2d 139, 162-63 (3d Cir. 1973); Failla v. City of Passaic, 146 F.3d 149, 158 (3d Cir. 1998); and Restatement (Second) of Torts § 876(b).]

For the reasons stated above, the Court disagrees, since Counts 4 and 6 will proceed. Accordingly, the Court will deny Defendants' motion as to Counts 5 and 7.

**E. Corporate Raiding (Count 10)**

Defendants argue that Count 10, corporate raiding, should
be dismissed as duplicative of Count 2, tortious interference,
and because it is not a recognized independent cause of action
in New Jersey. [Docket Item 26-1 at 23-24.] Plaintiff argues in
response that it is not duplicative of its claim of tortious
interference because stating a claim for corporate raiding
requires pleading an allegation of malice that Plaintiff did not
plead in its tortious interference claim. [Docket Item 32 at
23.] It also argues that corporate raiding is a recognized cause
of action in New Jersey under Howmedica Osteonics Corp v.
Zimmer, Inc., No. 11-1857, 2012 WL 5554543, at *12-*13 (D.N.J.
Nov. 14, 2012). [Id.] Defendants argue, in reply, first, that
Plaintiff's reading of Howmedica is incorrect, and second, that
tortious interference requires an allegation of malice,
rendering a corporate raiding claim duplicative and subject to
dismissal as a matter of judicial economy. [Docket Item 35 at
18-20.]

The Court reads Howmedica as Defendant does. It states that
the plaintiff there correctly argued that if a "soliciting
employer" induces "an employee to move to a competitor" when
"such an inducement has an unlawful or improper purpose, or uses
unlawful or improper means[,]" "the law may impose liability[,]"

speaking more generally, "if the soliciting employer is doing so with malice." 2012 WL 5554543, at *12. "However," the court continued, "each decision cited [by the plaintiff in support of this proposition, including Wear-Ever Aluminum, Inc. v. Townecraft Indus., Inc., 182 A.2d 387 (N.J. Sup. Ct. 1962) and Avtec Indus., Inc. v. Sony Corp. of America, 500 A.2d 712 (N.J. App. Div. 1985),] refers to solicitation in the context of tortious interference claims, claims addressed in Counts IV, VI-VII of Plaintiff[']s Complaint." Howmedica, 2012 WL 5554543, at *12. The court then granted summary judgment as to the corporate raiding claim as "facially duplicative" in order to "foster judicial economy and the comprehensive disposition of litigation." Id. at *13 (internal citations omitted).

Defendants also correctly cite Baxter v. Healthcare Corp. v. HQ Specialty Pharma Corp. for the proposition that a tortious interference claim must plead malice, "i.e., intentional interference without justification." 157 F. Supp. 3d 407, 420 (D.N.J. 2016). Given this, Plaintiff's argument that corporate raiding requires an allegation of malice while tortious interference does not lacks merit.

Accordingly, the Court will grant Defendants' motion to dismiss Count 10.

**F. Unfair Competition (Count 11)**

Defendants argue that Count II must be dismissed because, under New Jersey law, there is no distinct cause of action for unfair competition" and it represents a "subspecies of the class of torts known as tortious interference with business or contractual relations." [Docket Item 26-1 at 36, citing C.R. Bard, Inc. v. Wordtronics Corp., 561 A.2d 694, 696 (N.J. Super. Ct. Ch. Div. 1989) and Sussex Common Outlets, LLC v. Chelsea Prop. Grp., Inc., A3714-07T1, 2010 WL 3772543, at *9 (App. Div. N.J. Sept. 23, 2010).] Because Plaintiff's claim for unfair competition against Ozitus "is based on the same allegations underlying its tortious interference claims" in Counts 8 and 9 in identical language and in similar language in Count 2, it should be dismissed as a matter of law. [Docket Item 26-1 at 38.]

In response, Plaintiff argues, first, that Defendants misstate the law: citing Sussex Common Outlets, it quotes the court as having stated that "unfair competition is a business tort, generally consisting of the misappropriation of a business's property by another business," 2010 WL 3772543, at *3. [Docket Item 32 at 24.] Plaintiff alleges that the tort of unfair competition is "much broader" than the tort of tortious interference with contractual relations, in part because the tort of unfair competition does not require interference with,

or even the existence of, a contract, and could be established
"by acts of misappropriation and defamation." [Id. at 25, citing
Coast Cities Truck Sales, Inc. v. Navistar Int'l Transp. Co.,
912 F. Supp. 747, 786 (D.N.J. 1995).] Finally, Plaintiff argues
that its claim of unfair competition is not duplicative of its
claim for tortious interference in Count 2 because it need not
plead any facts related to the Individual Defendants' contracts
in order to plead that Ozitus committed wrongful
misappropriation, thereby properly pleading the claim of unfair
competition; Plaintiff argues that it did so in ¶¶ 143 through
146 of the Complaint. [Docket Item 32 at 26.]

Defendants argue in reply that the weight of the case law
supports a finding that unfair competition is merely a
subspecies of tortious interference; that although both claims
survived to summary judgment in Coast Cities, the court then
granted summary judgment against the plaintiff on those claims
without discussing why or how both claims had reached that stage
of the proceedings; and that Plaintiff does not contest that
"the underlying factual predicates" for the unfair competition
claim are identical to those for the tortious interference
claims in Counts 8 and 9. [Docket Item 35 at 21-23.]

In Sussex, the Appellate Division affirmed the dismissal of
a unfair competition claim for failure to state a claim where

the tortious interference claim was also dismissed and plaintiff

conceded "that its unfair competition claim [wa]s only a

subspecies of its tortious interference claim and that both

claims [we]re grounded on the same facts." 2010 WL 3772543, at

*10. In Coast Cities, the court stated that:

> The amorphous nature of unfair competition makes for
> an unevenly developed and difficult area of
> jurisprudence. . . . By incorporating other causes of
> action, including tortious interference, breach of
> duties of good faith and fair dealing,
> misappropriation and defamation, it applies a flexible
> and elastic standard of conduct in the commercial
> context. However, these same characteristics, when
> condensed in one general rubric, defy concrete
> standards by which to gauge an alleged instance of
> unfair competition. . . .
>
> In this case, plaintiff predicates its unfair
> competition claims on the same factual allegations
> forming the gravamen of its tortious interference and
> breach of contract claims[.] . . . While the elements
> for competition are not entirely clear, it seems
> likely that New Jersey law would find unfair
> competition where there has been tortious interference
> . . . or upon a finding of breach of good faith and
> fair dealing. . . .
>
> In this case, however, the Court has already
> determined that plaintiff's claims for tortious
> interference and breach of good faith and fair dealing
> do not withstand defendants' motions for summary
> judgment. It follows that they also fail to support
> Coast Cities' claim for unfair competition.

912 F. Supp. at 786.

However, where the "factual basis for the unfair

competition claim is the same as for the tortious interference

Count," as Plaintiff does not contest that it is (at least as to

Counts 8 and 9) and as it appears to be to the Court, the Court is persuaded that the better course is to dismiss the unfair competition claim as duplicative. See <u>Diversified Indus., Inc. v. Vinyl Trends, Inc.</u>, No. 13-6194, 2014 WL 1767471, at *6-*7 (D.N.J. May 1, 2014); <u>Juice Entm't, LLC v. Live Nation Entm't, Inc.</u>, No. 11-7318, 2012 WL 2576284, at *5 (D.N.J. July 3, 2012).

Accordingly, Defendants' motion to dismiss Count 11 is granted.

### G. Unjust Enrichment (Count 12)

Defendants argue that Plaintiff's claim of unjust enrichment must be dismissed because recovery under that claim is not available "'when a valid, unrescinded contract governs the rights of the parties'" and "Plaintiff's unjust enrichment claim against the Individual Defendants is predicated on the terms of the Non-Compete Agreement[.]" [Docket Item 26-1 at 38, quoting <u>Van Orman v. Am. Ins. Co.</u>, 680 F. 2d 301, 310 (3d Cir. 1982)(internal citations omitted).] Furthermore, Defendants urge, Plaintiff has failed to state a claim for unjust enrichment against either the Individual Defendants or Ozitus because Plaintiff does not adequately allege that Plaintiff "'expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its

contractual rights.'" [Docket Item 26-1 at 39, quoting <u>VRG Corp.</u>
<u>v. GKN Realty Corp.</u>, 135 N.J. 539, 554 (1994).]

Plaintiff responds that its claim of unjust enrichment
sounds in equity, and that New Jersey courts do not limit unjust
enrichment claims to either quasi-contractual settings, but may
find such a claim properly pled in "'other circumstances . . .
[e.g.,] when corrupt means have been employed to obtain a
governmental contract,'" and it is thereby "'used to deny the
wrongdoer any profit from the transaction and to thereby deter
such conduct.'" [Docket Item 32 at 27, quoting <u>Cty. of Essex v.</u>
<u>First Union Nat. Bank</u>, 862 A.2d 1168, 1172 (N.J. App. Div.
2004).]

However, on the facts alleged here, the Court agrees that
the claim of unjust enrichment is not properly pled. "New Jersey
does not recognize unjust enrichment as an independent tort
cause of action," <u>Cardionet, Inc. v. Medi-Lynz Cardiac</u>
<u>Monitoring, LLC</u>, No. 15-8592, 2016 WL 4445749, at *3 (D.N.J.
Aug. 22, 2016); Plaintiff does not allege a quasi-contract-based
claim where "a plaintiff has not been paid despite having had a
reasonable expectation of payment for services performed or a
benefit conferred," <u>Essex</u>, 862 A.2d at 1172, and this is not the
situation contemplated by the public corruption cases where
"disgorgement" of wrongful gains is required. <u>See id.</u> at 1172-

74; <u>Driscoll v. Burlington-Bristol Bridge Co.</u>, 8 N.J. 433
(1952); <u>S.T. Grand, Inc. v. City of New York</u>, 32 N.Y.2d 300
(1973); and <u>Manning Eng'g, Inc. v. Hudson Cty. Park Comm'n</u>, 74
N.J. 113 (1977).

For the foregoing reasons, the Court will dismiss Count 12.
Such dismissal will be without prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendant's
motion with respect to Count 3 (breach of implied covenant of
good faith and fair dealing), Count 10 (corporate raiding),
Count 11 (unfair competition), and Count 12 (unjust enrichment)
and will deny Defendants' motion with respect to the remaining
claims. Counts 3 and 12 will be dismissed without prejudice to
Plaintiff's right to seek a curative amendment to the Complaint
consistent with this Opinion within the deadline for motions to
amend to be set in the forthcoming initial conference under Fed.
R. Civ. P. 16(a). Counts 10 and 11 will be dismissed with
prejudice. The accompanying Order will be entered.


**June 27, 2017**          **s/ Jerome B. Simandle**
Date                          JEROME B. SIMANDLE
                                   U.S. District Judge